[No. A067400. First Dist., Div. One. July 19, 1995.]

In re the Marriage of JOHN A. and SUZANNE F. MARSHALL.
JOHN A. MARSHALL, JR., Respondent, v.
SUZANNE F. MARSHALL, Appellant.

**COUNSEL**

Luke & Perry and George W. Luke for Appellant.

Seifer, Murken, Despina & James and Douglas G. Murken for Respondent.

**OPINION**

**STRANKMAN, P. J.**—In a postdissolution proceeding, respondent John A. Marshall, Jr. (husband) was ordered to pay appellant Suzanne F. Marshall (wife) $34,966.43 as reimbursement for federal taxes and related costs incurred when she was assessed for a tax liability husband assumed under the dissolution judgment but failed to satisfy. In an effort to enforce the order, wife tried to garnish husband's retirement benefits payable under a pension plan confirmed as his separate property and governed by the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) (ERISA) which generally forbids garnishment.[1] The trial court refused to issue a qualified domestic relations order (§ 1056(d)(3)(A), (B)) (QDRO, commonly called a "quadro"), which is an exception to ERISA's garnishment proscription. Wife appealed. ▊ We hold that the enforcement of a collateral, contingent tax liability in a dissolution judgment does not relate to the provision of marital property rights within the meaning of a QDRO and is insufficient grounds to defeat ERISA's general garnishment proscription. The court's order denying issuance of a QDRO is affirmed.

FACTS

The parties were divorced on June 29, 1988, after almost 24 years of marriage. The judgment of dissolution incorporated a May 1988 marital settlement agreement (agreement) which resolved an ongoing dispute over the division of community property. Various property arrangements were made, aimed at splitting the community property in shares of equal value.

---

[1]All further statutory references are to ERISA in title 29 of the United States Code.

The division of husband's employee retirement pension accounts was deferred until a later time, with the court retaining jurisdiction over the matter. Husband, a pilot with Pan American Airlines, agreed to pay $2,700 monthly spousal support to wife, a homemaker.

Under the 1988 agreement, the parties resolved to file joint federal and state tax returns for 1987, and had obtained an extension of time until August 15, 1988, to file their federal tax return. Any tax refund was to be split equally, but husband agreed to "indemnify Wife and hold her harmless from any audit, claim or other assessment by any governmental authority." A joint federal tax return was prepared by an accountant and signed by the parties in June 1988, about a week before the judgment of dissolution was entered. The return listed $13,814 in taxes owed. When wife signed the return, she was told by the accountant that the return would be delivered to husband for filing and payment. Wife thought no more of the 1987 tax return.

In January 1991, the parties reached agreement on the division of husband's pension plans and eliminated spousal support. Husband had fallen in arrears on his support payments, which he later explained to the court as due to decreased salary as Pan American Airlines slumped into bankruptcy. It was stipulated that wife would immediately receive $325,000 from an early distribution out of one of husband's pension accounts, in exchange for which wife waived all future spousal support. All remaining interest in husband's pension plans was confirmed as his separate property.

Wife later learned that husband did not file the 1987 joint federal tax return until October 1991. It is not clear whether he submitted any tax payment when filing the return, although it is clear that any payment was insufficient to satisfy the substantial interest and penalties that accumulated over the years. In April 1992, the Internal Revenue Service confiscated wife's 1991 tax refund and threatened to levy her property for the remaining amount owing. Wife paid almost $30,000 for the parties' 1987 federal taxes.

In August 1992, wife sought an order to enforce the dissolution judgment under which husband had agreed to hold her harmless from any 1987 tax assessment. Husband responded and explained in a letter to the court that his financial difficulties left him without funds to pay the 1987 taxes. On September 17, 1992, the court issued an order enforcing the dissolution judgment to reimburse wife $34,966.43 for the taxes paid and costs and attorney fees incurred.

Wife had trouble collecting the judgment. A writ of execution was issued in November 1993 and wife attempted to levy husband's monthly retirement

distributions on an annuity contract administered by Prudential Assets Management Company (Prudential). Prudential served a memorandum of garnishee objecting to the levy and explaining that husband's Pan American Airlines pension plan is governed by ERISA, and therefore exempt from garnishment absent a QDRO. In January 1994, wife moved for an order determining Prudential's claim of exemption. Husband joined the proceedings, registering his objection to the garnishment of his annuity payments. Husband, wife, and Prudential agreed to be bound by the court's determination of the pension exemption issue, provided that any levy order met the standards of a QDRO. After several continuances, the motion was heard and submitted on May 9, 1994. On July 26, 1994, the court issued its order finding husband's annuity payments exempt and ruling that wife is not entitled to a QDRO. Wife timely appealed.

## DISCUSSION

There is no question that wife has a valid order under the dissolution judgment and is entitled to execute it. The question is whether she may execute it upon husband's ERISA governed pension plan. ▮▮ ERISA "established a comprehensive federal scheme for the protection of pension plan participants and their beneficiaries." (*American Tel. & Tel. Co.* v. *Merry* (2d Cir. 1979) 592 F.2d 118, 120.) ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. (§ 1144(a).) ERISA bars (with limited exceptions) the alienation or assignment of benefits provided by ERISA pension benefit plans. (§ 1056(d)(1).) Garnishment is a precluded alienation under ERISA. (*Guidry* v. *Sheet Metal Workers Pension Fund* (1990) 493 U.S. 365, 371-372 [107 L.Ed.2d 782, 791-793, 110 S.Ct. 680].) The United States Supreme Court has recognized that ERISA's proscription against garnishment hinders the collection of lawful debts and may prevent some plaintiffs from securing relief for suffered wrongs. (*Id.* at p. 376 [107 L.Ed.2d at pp. 794-795].) But the garnishment proscription is necessary to effectuate Congress's intent to safeguard a stream of income for all pensioners. (*Ibid.*)

ERISA was amended by the Retirement Equity Act of 1984 (REA) in response to the decisions by some courts which had interpreted ERISA to bar enforcement of domestic support orders. (Pub.L. No. 98-397 (Aug. 23, 1984) 98 Stat. 1433; see *Mackey* v. *Lanier Collection Agency & Serv.* (1988) 486 U.S. 825, 838-839 [100 L.Ed.2d 836, 849-850, 108 S.Ct. 2182] [discussing amendment].) As amended, a QDRO—a qualified domestic relations order—was created as an express exception to ERISA's alienation proscription. (§ 1056(d)(3)(A).) There are two elements to a QDRO: (1) it must be a domestic relations order, and (2) it must be qualified. ▮▮▮▮ A

domestic relations order is defined by section 1056(d)(3)(B)(ii) as "any judgment, decree, or order (including approval of a property settlement agreement) which [¶] (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a [pension plan] participant, and [¶] (II) is made pursuant to a State domestic relations law (including a community property law)." A domestic relations order is qualified if it "creates or recognizes the existence of an alternate payee's right, or assigns to an alternate payee the right, to receive all or a portion of the benefits payable with respect to a participant under a plan" and satisfies specified procedural and disbursement requirements. (§ 1056(d)(3)(B)(i), (C), & (D).) An alternate payee includes a former spouse "recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan . . . ." (§ 1056(d)(3)(K).)

A QDRO is generally used to divide community property interests in a pension or to enforce unpaid child or spousal support. Wife advocates a broader application of a QDRO, to enforce the dissolution judgment's marital settlement agreement under which she was to be held harmless from any 1987 tax assessment. She argues that the postdissolution order enforcing her creditor rights arising under the agreement relates to the provision of "marital property rights." We believe wife's argument wrong. ERISA's proscription of assignment was intended to "ensure that the employee's accrued benefits are actually available for retirement purposes." (H.R. Rep. No. 93-807, 93d Cong., 2d Sess. (1974), reprinted in (1974) U.S. Code Cong. & Admin. News, pp. 4670, 4734.) In effectuating legislative intent, ERISA's anti-assignment provision has been vigorously enforced and exceptions to the provision read narrowly. (*Patterson* v. *Shumate* (1992) 504 U.S. 753 [119 L.Ed.2d 519, 112 S.Ct. 2242]; *Guidry* v. *Sheet Metal Workers Pension Fund, supra*, 493 U.S. at pp. 376-377 [107 L.Ed.2d at pp. 794-795]) The limited object of REA, which authorizes QDRO's, was to protect the financial security of women who had contributed to their marriage and anticipated sharing in their husband's retirement income. (*Kahn* v. *Kahn* (S.D.N.Y. 1992) 801 F.Supp. 1237, 1244, affd. (2d Cir. 1993) 2 F.3d 403.)

 Here, wife received her share of the community interest in husband's pension plans and is not seeking support necessary to her financial security. The annuity account which wife wishes to garnish was confirmed as husband's separate property in 1991. An order to enforce the 1987 tax liability assumed by husband by garnishing that annuity account now would not relate to the provision of "marital property rights." The goals of ERISA would be undermined were we to hold otherwise and endorse the garnishment of a divorced pensioner's income for the satisfaction of a collateral

obligation assumed by the pensioner in a dissolution judgment issued years earlier.

## DISPOSITION

The July 26, 1994, order denying issuance of a qualified domestic relations order is affirmed.

Stein, J., and Dossee, J., concurred.

A petition for a rehearing was denied August 17, 1995, and appellant's petition for review by the Supreme Court was denied November 16, 1995. Mosk, J., was of the opinion that the petition should be granted.